UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DORTHY KAY RAY,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )          No.  2:14-CV-348
                                         )
ROBERT A. McDONALD,                      )
Secretary, Department of Veterans Affairs, )
                                         )
            Defendant.                   )


MEMORANDUM OPINION AND ORDER


        The plaintiff brought this action for sex discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and for age discrimination in violation of

the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA") against her employer,

the Department of Veterans Affairs.   The plaintiff alleges sex and age discrimination by

disparate treatment and that she was subjected to a hostile work environment.   The defendant

filed a motion for summary judgment, [Doc. 22], asking this Court to dismiss all claims against

him because the plaintiff is unable to sustain any sex or age discrimination action.   The plaintiff

initially failed to respond to the defendant's motion for summary judgment within the time

allowed by the Rules of Civil Procedure or the local rules.   Fifty-five days after the defendant

filed its motion, the Court ordered the plaintiff respond to the dispositive motion or indicate her

lack of opposition to the relief sought.   [Doc. 21].   The plaintiff then filed a short, two-page

response to the motion, making no legal argument, but rather presenting the Court with the

procedural posture of the case and objecting to a couple of the defendant's statements of material

1

fact. [Doc. 27]. The defendant replied. [Doc. 33]. This matter is ripe for review. For the reasons that follow, the defendant's motion for summary judgment, [Doc. 22] is GRANTED.

## I.    FACTS

In 1992, at the age of 41, plaintiff began working as a diagnostic radiology technologist ("DRT") at the James H. Quillen Veterans Administration Medical Center ("VAMC") in Mountain Home, Tennessee. Plaintiff continued to work as a DRT until her retirement on November 7, 2012, when she applied for disability benefits, alleging that she was unable to work due to knee and back conditions. Around the year 2000, the plaintiff requested that her hours be reduced to a part-time schedule. This request was granted and the plaintiff worked a standard part-time schedule of 20 hours per week, not including additional overtime hours. The plaintiff never applied for any open full-time DRT position after requesting to work only part-time. Since the year 2009, the plaintiff refused to work the third/midnight shift, one of the three shifts of each 24-hour period. However, between 2009 and 2011, the plaintiff's income increased due to the amount of extra/overtime shifts that she worked. From 2009 to 2012, Randy Shoun was the plaintiff's first-line supervisor as Supervisory DRT and Mary Jane McKinney was the plaintiff's second-line supervisor as Chief Technologist. Dr. Salman Qayum, M.D. was the Head of the Radiology Department at the VAMC during this time.

Around 2011, the VAMC determined that its patients could be better served if DRT's were cross-trained on basic computed tomography ("CT") modalities in an effort to improve response times for some victims. According to McKinney, newly-hired DRTs were cross-trained first while current employees were cross-trained as training opportunities became available that fit within the employees' work schedules. Cross-training occurred informally while the DRT

was on-duty and as patient numbers and modality coverage allowed. The plaintiff did not receive the CT cross-training before her retirement.

In her complaint, the plaintiff alleges discrimination based on her sex and age which constituted disparate treatment and a hostile work environment. The alleged discrimination is based on some decisions by "Management" [1] which she defined as McKinney and Shoun, and some comments allegedly made by a co-worker, Ron Zimmern and Dr. Qayum, head of the Radiology Department. The complaint alleges the following incidents as her factual basis for relief:

1. In 2009, plaintiff's request to work on the Magnetic Resonance Imaging ("MRI") modality, which "should have been chosen according to seniority," was denied "due to her age and sex."

2. In November 2009, Shoun gave plaintiff an "unjustified performance rating" which was subsequently upgraded to "exceptional."

3. From April 2010 to June 2011, plaintiff was "refused to work overtime which was again chosen according to seniority" and management chose instead "predominately less senior, younger males" to work the overtime shifts.

4. In July 2010, the plaintiff was questioned by "management" about her retirement plans.

5. In October 2010, Shoun gave plaintiff an "unjustified performance rating." After additional meetings regarding the x-ray mistakes used to compute her rating, the

---

[1] In her complaint, the plaintiff defines "management" as McKinney, Shoun, Dr. Qayum, defendant Robert McDonald as Secretary of the Department of Veterans Affairs, and Charlene Ehret, Director of the VAMC. However, McDonald and Ehret are not mentioned specifically regarding any factual allegations in the complaint or in the plaintiff's deposition.

plaintiff's performance rating was subsequently upgraded. Plaintiff alleges that the mistakes on the x-rays used to give her lower rating were "falsified" by Shoun.

6. From June 13, 2011 to the time of her retirement on November 7, 2012, the plaintiff was "denied overtime opportunity which violated the seniority system." The Court notes that according to her testimony, plaintiff was on medical leave from May to October 2012, thereby more appropriately making this allegation that she was wrongfully denied overtime from June 13, 2011 to May 2012.

7. Plaintiff was refused an opportunity to cross-train on the CT machines violating the seniority system, thereby denying her "advancement and increased compensation."

8. At a July 12, 2011 monthly staff meeting, Dr. Qayum made a comment about "older employees being set in their ways" when discussing changes in the department. Further, Ron Zimmern was allowed to "rant and rave" about older employees not doing their job without any interruption from management.

9. On July 20, 2011, plaintiff had an interaction with Zimmern wherein she believed it necessary to call security. Following the interaction, management "failed to correct" Zimmern's behavior and he was not disciplined whereas she was verbally counseled.

10. Upon returning from medical leave in October 2012, she was refused a "light duty" assignment and was asked to perform tasks she was physically unable to perform.

Because the plaintiff did not address factual or legal arguments in her response, the Court must rely upon the complaint and deposition to determine the plaintiff's allegations for sex and age discrimination. Upon reviewing the allegations, the Court categorizes these allegations into seven categories: (1) 2009 denial of request to work MRI modality; (2) denial of overtime; (3) "unjustified performance ratings"; (4) questioning about retirement; (5) denial of cross-training;

(6) comments regarding older employees being set in their ways and Zimmern's comments about older employees at the monthly staff meeting; and (7) plaintiff was verbally disciplined while a male employee was not for an incident.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this

Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## II.    ANALYSIS

Title VII makes unlawful an employer's decision "to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits discrimination and retaliation based on an employee's age where the employee is over 40 years old. 29 U.S.C. §§ 623(a)a, 623(d); *Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008). The plaintiff alleges she was subjected to age and sex discrimination by disparate treatment and a hostile work environment based on her sex and age. To prevail on a sex discrimination claim under Title VII or an age discrimination claim under the ADEA, the plaintiff must establish her claims through either direct or circumstantial evidence.

### 1.  Direct Evidence

Direct evidence "proves the existence of a fact without requiring any inferences" of the decisionmaker's discrimination. *Brewer v. New Era, Inc.*, 564 F. App'x 834, 838 (6th Cir. 2014) (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360F.3d 544, 548 (6th Cir. 2004)). Discriminatory statements must come from the decisionmaker in order to constitute direct evidence of discrimination. *Geiger v. Tower Automotive*, 579 F.3d 614, 620-21 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004)). Statements by non-decisionmakers or statements by decisionmakers that are "unrelated to the decisional process itself cannot satisfy the plaintiff's burden" to show discriminatory animus. *Id.* (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). Statements that allegedly show an employer's bias are evaluated by considering four factors: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). These factors must be evaluated as a whole, taking all of the circumstances into account. *Id.*

The defendant argues that the plaintiff has not presented any direct evidence of sex or age discrimination. While there is no response from the plaintiff, a thorough reading of the plaintiff's deposition provides no direct evidence of either age or sex discrimination. The only evidence presented in the plaintiff's deposition that comes even close to direct evidence of age discrimination would be Dr. Qayum's statements made during a staff meeting. According to the plaintiff, Dr. Qayum said, "there's changes going to be made and it'll be hard for older people to accept [th]em, because it's hard for them to make a change in their old ways." The plaintiff

testified that she felt as if the comment was made toward her and four or five other employees who were present and over 60 years old. Although this statement mentions "older" employees, the plaintiff has presented no evidence or testimony that this single comment was in any way connected to an adverse employment action. The plaintiff alleged in her complaint that "management" made comments about her retirement. However, after a review of her deposition, the only comment allegedly made about the plaintiff's retirement was made by Ron Zimmern, a co-worker.

The only testimony in her deposition that could be construed as direct evidence of sex discrimination occurred when the plaintiff alleges that she was verbally counseled for an incident but a male co-worker, Ron Zimmern, was not counseled.[2] The plaintiff testified that she had no evidence that Zimmern was not also verbally counseled for his part in the incident. [*Plaintiff Deposition II*[3] at 60]. She further testified this incident was part of her claim of discrimination because "I felt discriminated against because the supervisor could've talked with him about situations before this had come up. But he just sort of went around and did what Ron wanted to do." [*Id.*]. The plaintiff's testimony in no way connects the alleged failure to counsel a male co-worker to discrimination because of her sex. Further, McKinney's declaration states that she counseled both the plaintiff and Zimmern regarding the incident. [Doc. 25 ¶ 20]. The plaintiff has presented no evidence of either age or sex discrimination that does not require an inference to show age or sex discrimination.

---

[2] This incident cannot be used as a basis of age discrimination because Zimmern, like the plaintiff, was over 40 years old at the time of the incident. James Johnson, a Senior Human Resource Specialist at the VAMC submitted a declaration that Zimmern was born in 1960. Therefore, Zimmern was over 50 years old at the time of the incident in 2011.

[3] The plaintiff's deposition began on August 12, 2016. This deposition was concluded early because the plaintiff brought additional notes and papers to the deposition that had no previously been reviewed by the defendant. The plaintiff's deposition resumed on September 13, 2016. The first deposition is filed as Document 23-1 and will be cited as "*Plaintiff Deposition I*." The second deposition is filed as Document 23-2 and will be cited as "*Plaintiff Deposition II*."

## 2. Circumstantial Evidence

Where an sex or age discrimination claim is based on circumstantial evidence, the Court must employ a three-step burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Geiger v. Tower Auto.*, 579 F.3d 614, 621-22 (applying the *McDonnell Douglas* framework to ADEA circumstantial evidence cases). This framework requires the plaintiff to establish a *prima facie* case for discrimination by showing that (1) the plaintiff is a member of a protected class, either a female or over 40 years old; (2) the plaintiff was subject to an adverse employment decision; (3) the plaintiff was qualified to hold the position; and (4) the plaintiff was replaced with someone outside of her protected class or was treated differently than employees outside of her protected class, namely males or substantially younger employees. *Geiger*, 579 F.3d at 622; *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

If the plaintiff has met the *prima facie* requirements, then the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. This is a burden of production, not persuasion, on the defendant employer and does not involve a credibility determination. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Once a legitimate, non-discriminatory reason is proffered, the burden shifts back to the plaintiff to show that the articulated reason is merely pretext that is intended to mask the age discrimination. *McDonnell Douglas*, 411 U.S. at 802.

A plaintiff may be able to show pretext where (1) the proffered reason has no basis in fact; (2) the proffered reason was not the actual reason behind the adverse employment decision; or (3) the proffered reason was insufficient to warrant the adverse employment decision. *Blizzard v. Marion Technical College*, 698 F.3d 275, 285 (6th Cir. 2012). The burden to show

pretext requires the plaintiff to produce "sufficient evidence from which a jury could reasonably reject the employer's explanation of why it fired her." *Id.* (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

### a. *Prima Facie* Case

The plaintiff clearly meets the first prong of a *prima facie* case for sex or age discrimination, as she is a member of both protected classes, a female and over 40 years old. However, the defendant argues that the plaintiff cannot establish a *prima facie* case of either age or sex discrimination because she cannot meet the second prong of the test to show that she was subjected to an adverse employment action. Again, because the plaintiff has not responded to this argument, the Court will attempt to glean any evidence of a *prima facie* case from her complaint allegations and deposition testimony submitted by the defendant.

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998).

### i. Failure to Cross-Train

The plaintiff alleges that she was denied the opportunity to cross-train on the CT modality as a result of her sex and age. An employer's "failure to provide Plaintiff with extra training does not constitute an adverse employment action under this definition." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008). Where the training was not needed, and the lack of training did not affect the employee's ability to perform the job or receive benefits, the Sixth Circuit has held that denial of supplemental training is not an adverse employment action. *Id.* An adverse employment action may have occurred where the plaintiff

was deprived of increased compensation as a result of a failure to train. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 710 (6th Cir. 2007).

In her deposition, the plaintiff alleges that McKinney put up a sign-up sheet for employees who were interested in cross-training. [*Plaintiff Deposition II* at 40-41]. The plaintiff testified that the list said training would "go by seniority" and she signed up on the list. [*Id.*]. The plaintiff testified that she wanted cross-training "so [she] could advance and get increase in pay." [*Id.* at 43]. However, the plaintiff further testified that the did not actually know if cross-training resulted in an increase in pay but was "just going by what I heard [th]em say" and clarified that "Linda Roach said like, 'If I get trained I'll get more money,' you know, like that." [*Id.* at 44]. In essence, the plaintiff simply believed based on the hearsay of a fellow employee, that she might be eligible for an increase in pay if she were cross-trained. However, McKinney's declaration states that the plaintiff "did not receive a decrease in wage or salary, a less distinguished title, a material loss of benefits, or any diminution of her responsibilities as a result of the fact that she was not cross-trained in CT." [Doc. 25 ¶ 12]. More importantly, McKinney declared that the "wages paid to DRTs did not increase upon completion of CT cross-training. Their wages increased if they moved out of their DRT position into a CT position, by applying for and being selected as the successful candidate for a CT position." [*Id.* ¶ 14].

The defendant argues that this alleged denial of cross-training was not an adverse employment action because the plaintiff was not denied any increase in compensation for failing to receive supplemental training. The plaintiff argues in her objection to the defendant's statement of material fact that she was "denied the opportunity to advance by her preclusion from C.T. cross-training." [Doc. 29-1 at 2]. However, the plaintiff's argument of a denial of advancement only applies if the plaintiff was interested in or willing to leave her job as a DRT,

apply for an open CT position, and was eventually hired as a CT operator. The plaintiff's deposition provides no indication that she was willing to apply for an open CT position or leave her job as a DRT. Instead, the plaintiff only states that she believed, based on rumor and hearsay, that she would receive an increase in her wages. The plaintiff's compensation as a DRT could not have been increased merely based on cross-training.

The plaintiff objected to a statement in McKinney's declaration that she did not post a sign-up list for cross-training on the basis that, before the EEOC, McKinney gave testimony that she did in fact post the list. [Doc. 29-1 at 1]. The plaintiff argues that this inconsistency in McKinney's EEOC testimony and declaration render her declaration unsuitable to establish facts in the case and create a genuine issue of material fact sufficient to defeat summary judgment. However, the disputed fact must be material in order to defeat a motion for summary judgment. Whether or not McKinney, or anyone else for that matter, posted a sign-up sheet regarding cross-training is not material to the plaintiff's discrimination claim because a failure to provide supplemental training is not an adverse employment action. The plaintiff has not presented any dispute of material fact regarding the plaintiff's alleged denial of cross-training. The Court finds that this denial was not an adverse employment action and cannot serve as the basis of her *prima facie* discrimination case.

## ii. Denial of Overtime

The plaintiff's complaint makes two allegations regarding the denial of overtime. First the plaintiff alleges that from April 2010 to June 6, 2011, Shoun and McKinney "refused to allow Plaintiff to work overtime which was again chosen according to seniority, choosing predominately less senior, younger males." [*Complaint* ¶ 12]. She further alleges that from June

13, 2011 to May 2012[4], "she again was wrongfully denied overtime opportunity which violated the seniority system in effect in the department at that time." [*Id.* ¶ 18]. However, the second allegation does not indicate if this discrimination was based on her age or sex.

Denial of overtime may constitute an adverse employment action if "properly supported" with evidence. *Broska v. Henderson*, 70 F. App'x 262, 268 (6th Cir. 2003). Where the only evidence submitted by a plaintiff of his denial of overtime claim was his own statement that his work responsibilities were diminished causing him to lose overtime in excess of $16,000, the statement was insufficient to withstand the defendant's motion for summary judgment. *Id.* The court in *Broska* noted that the plaintiff had "not even stated how much overtime he lost due to the alleged discrimination." *Id.* The Sixth Circuit has also affirmed a grant of summary judgment because the plaintiff had not raised a genuine issue of material fact where the plaintiff alleged he was denied types of overtime due to his race but where the defendant produced evidence that the plaintiff had in fact worked multiple types of overtime during the time period. *Montgomery v. Honda of Am. Mfg., Inc.*, 47 F. App'x 342, 349 (6th Cir. 2002).

Here, the plaintiff has admits that she was "regularly assigned additional hours" over and above her part-time schedule of 20 hours per week. [Doc. 29-1 ¶1 (admitting defendant's statement of material fact, Doc. 24 ¶¶ 8-9)]. She further admits that between 2009 and 2011, her "income increased because of overtime and extra days that were given to her." [*Id.*]. The plaintiff testified that the overtime "didn't go by seniority, they chose a lot of people over me, younger people, younger males." [*Plaintiff Deposition II* at 25-26]. The plaintiff testified to general allegations that the overtime shifts were not distributed fairly and that the shifts did not follow an alleged seniority system. [*Id.* at 31 ("Well see, every afternoon it would be a different

---

[4] The Court notes that, as discussed above, the allegation is that overtime was denied from June 13, 2011 to her retirement date of November 7, 2012. However, the plaintiff testified she was on medical leave from May 2012 until October 2012 and therefore could not have been denied overtime during this period as she was not working.

person go down if they had extra hours, because they had to cover the shift. So, it happened periodically, I really couldn't name all of [th]em."); *id.* at 35-36 ("They would give me overtime but still they could've let me work more overtime. Because seniority, they would ask other people to work first before they would me, that was my problem with it. . . . But when I could work overtime they would ask somebody else, the supervisors."); *id.* at 38 ("They didn't go by no seniority, they would choose people they wanted to work that overtime. And they would give me minimum overtime.")]. While a couple of times the plaintiff alleged that younger employees or younger male employees were given overtime that she should have been offered, she testified that during the time of 2011 to 2012 she believed that the additional shifts went to "basically everyone in the department" except her. [*Id.* at 47].

The only specific allegations of lost overtime that the plaintiff could recall was "one afternoon we were standing around and Mary Jane [McKinney] came, and Marsha Haley, the students, Ms. Johnson and Audrey Honeycutt, they was several of us standing around. And [McKinney] turned and asked one of those students if they wanted to go down and work overtime in the MRI unit, and she didn't recognize me standing there at all and ask me." [*Id.* at 28]. The plaintiff also testified that the supervisors would choose "their favorites, younger" employees to work overtime. [*Id.* at 38].

The plaintiff could not estimate how much overtime she believed she was refused. The plaintiff testified that "Usually I get extra days instead of overtime, so, whatever they would ask me that I felt like doing, then I would've done, I mean, if they asked. So I don't know how much overtime it was that week." [*Id.* at 66]. When asked how much overtime she felt like she was entitled to during any given pay period, the plaintiff responded "whatever was available and they would've ask, I would've said yes or no." [*Id.* at 66-67]. When asked what evidence the

plaintiff had demonstrating that she should have been given additional hours or shifts, the plaintiff testified, "Well if you could go back and pull the paystubs on other people in my department, younger or older, you can see the amount of hours, the different the amount of hours that they worked than I worked." [*Id.* at 79]. This evidence is merely from the plaintiff "observing what went on and known that they worked a lot more." [*Id.*].

While the plaintiff alleges that she was denied overtime, or at least should have been asked if she was willing to work additional overtime, she admits that her pay increased during the time of 2009 to 2011 due to overtime and extra shifts. Further, the plaintiff admitted often in her testimony that she did work overtime during the alleged period. [*Id.* at 35 ("They would give me overtime but still they could've let me work more overtime."); *id.* at 38 ("All, all I want you to understand is that I got several hours overtime, I was very appreciative, but they would not ask me to work over, like they would do double shifts . . . .")]. Moreover, the plaintiff's paystubs during the relevant period were discussed in her deposition and she admits to receiving many hours of overtime or extra days/shifts during the alleged period. [*Id.* at 64-71]. The plaintiff acknowledged that during some 2011 two-week pay-periods, she worked 20 hours more than her usual schedule, [*Id.* at 70], worked fifteen hours more than her usual schedule, [*Id.* at 66], worked six hours more than her usual schedule, [*Id.* at 68], and worked four hours of overtime, [*Id.* 65].

Here, the plaintiff has no evidence of how much overtime she was allegedly refused. Instead, the plaintiff testifies, based on her observations of others, that "basically everyone in the department" got more overtime than she did. From a careful review of her deposition, it appears the plaintiff was disgruntled that the overtime schedule did not follow an alleged seniority policy and she wanted to be asked to work more overtime. However, she has no evidence that any

overtime was refused to her because of her age or sex. Further, there is no evidence, or even an estimate, of how much overtime she allegedly was entitled to. There is ample evidence that the plaintiff worked overtime shifts during the time period. The plaintiff has failed to raise a genuine issue of material fact as to a discriminatory refusal to work overtime.

### iii. Return to Full-Time Position

The plaintiff's complaint does not allege any discrimination based on a failure to return her to a full-time position. However, in her deposition, the plaintiff states that she was discriminated against when younger applicants were hired for full-time DRT positions. [*Id.* at 7-9]. The plaintiff admitted that she never applied for an open full-time position and instead she "just asked for it" to one of her supervisors. [*Id.* at 9]. The plaintiff testified that "in the early 2000s" she expressed interest in returning to full-time "just by talking and I'd say 'remember me, I'm wanting to go back to full-time because my insurance is so high.'" [*Id.* at 139]. The plaintiff additionally states that she applied for a supervisor position but that McKinney was selected for the position instead. [*Id.* at 8]. The plaintiff did not allege that being denied the promotion that McKinney[5] was selected for was because of her age or sex but instead she was upset because McKinney didn't have as much experience as the plaintiff. [*Id.* at 138].

Generally, a plaintiff bringing a failure-to-promote or failure-to-rehire claim must establish that she applied for and was qualified for a promotion. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). The same would be equally true for a situation like this where the plaintiff was working part-time but wanted to work in a full-time position. The plaintiff admits that she did not apply for a full-time position that was open and externally published. There are recognized, limited circumstances where an employee will not be required

---

[5] The Court notes that McKinney is a member of the same protected classes as the plaintiff, a female over 40 years old.

to submit a formal application for an open position to sustain a discrimination claim. *Wagner v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989). "In certain situations a formal application is not necessary in order to establish a *prima facie* case of discrimination." *Id.* The court discussed situations where the employer has created an atmosphere in which employees understand that applying for the position is fruitless because the discrimination is entrenched and pervasive. *See id.* The plaintiff testified that she did not apply for the open, published full-time position "because they would deny [her]. Because they said they already had somebody picked for it." [*Plaintiff Deposition II* at 98]. The plaintiff testified that she just "hear[d th]em talk" that McKinney had promised some of the younger students a DRT position when they completed school. [*Id.*]. The plaintiff, relying merely on rumor and hearsay that a student had been promised a position, does not create a genuine issue of fact that the atmosphere of discrimination was pervasive such that she was not required to submit a formal application. The plaintiff has failed to show a genuine issue of material fact regarding her failure to be moved to a full-time position. This testimony of discrimination, which was not alleged in the complaint, is not an adverse employment action as required by the applicable statutes.

### iv. Failure to Counsel Zimmern

As discussed above, the plaintiff alleges that she experienced sex discrimination because she was verbally counseled for an incident with Zimmern and he, as a male employee, was not. The plaintiff admitted she had no evidence that Zimmern was not also counseled regarding the incident. Moreover, McKinney's declaration states that she counseled Zimmern regarding the incident. The plaintiff has presented no evidence of a failure to verbally counsel Zimmern and this cannot serve as an adverse employment action.

### v. 2009 Refusal to move to MRI modality

The plaintiff alleges in her complaint that in 2009, she was denied a request to move to work on the MRI machine, "for which she should have been chosen according to seniority" but was denied because of her age and sex. [*Complaint* ¶ 10]. However, the only testimony of a refusal to move to an MRI position occurred around 2004 or 2005. [*Plaintiff Deposition I* at 28-29]. This refusal in 2004 or 2005 was not alleged in the complaint and is entirely outside of the pertinent time period of this complaint. Further, the plaintiff testified that the supervisor chose one of his friends to move to the MRI unit. She made no allegation and gave no testimony that the refusal was based on her age or sex other than a conclusory allegation in her complaint referencing a different time period. Further, she gave no testimony that she applied for an open MRI position but instead that she attended an MRI training in an effort to be prepared to move to an MRI position when the time came.

### vi. Performance Ratings

The plaintiff alleges that she was given "unjustified" performance ratings by Shoun. In her deposition, the plaintiff described that she believed she should have initially received "outstanding" ratings both years but instead Shoun gave her a lower "exceptional" rating and a lower "fully satisfactory" rating. [*Plaintiff Deposition* at 12-16]. The plaintiff admits that after further meetings with McKinney and Shoun, both ratings were upgraded to "outstanding." [*Id.* at 17-19]. The plaintiff gave no testimony that these "unjustified" ratings, which were subsequently raised to the highest rating of "outstanding," were given by Shoun because of her age or sex. The plaintiff later stated she felt Shoun was "personally trying to get back at" her and "personally wanted to push [her] to the side." [*Id.* at 48-49]. The plaintiff also gave no

testimony nor presented any evidence that these ratings in any way affected her pay[6], benefits, or job responsibilities. The Court finds that these ratings, as presented here, are not adverse employment actions.

### vii. Failure to Provide "Light Duty"

The plaintiff's complaint alleges that upon returning to work in October 2012 following her medical leave, her supervisors "refused to allow her to work on light duty" as her medical needs required. [*Complaint* ¶ 26]. In her deposition, the plaintiff states that she returned and worked three weeks in October 2012 and was on "modified duty." [*Plaintiff Deposition II* at 112].

> And Randy [Shoun] told me there was no light-duty. So I was on modified duty those three weeks, and the three weeks that I was on that modified duty he asked me to go push a portable, and going by myself and lifting patients and everything, when the modified duties stated not to be lifting over such-and-such pounds and things like that.

[*Id.* at 112-13]. However, the plaintiff presented no evidence that this failure to provide "light duty" work was related in any way to her age or sex. The plaintiff has not alleged that there was in fact light-duty work available that was refused to her. The plaintiff has failed to create a genuine issue of material fact regarding a failure to provide light duty work as an adverse employment action.

The plaintiff has failed to raise a genuine issue of material fact as to her claim of disparate treatment discrimination based on her age or sex. The defendant's motion for summary judgment as it relates to the plaintiff's disparate treatment claim is GRANTED.

### 3. Hostile Work Environment

---

[6] The plaintiff complains that because she was given an "outstanding" rating that she should have been given an increase in pay. [*Plaintiff Deposition II* at 100]. However, she gave no testimony that this denial of a discretionary raise was related to her age or sex.

To establish a claim for a hostile work environment under Title VII based on sex discrimination, the plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016). To establish a hostile work environment claim under the ADEA the plaintiff to show that: (1) she is at least 40 years old; (2) she was subject to harassment, either through words or actions, based on age; (3) the harassment unreasonably interfered with the plaintiff's work performance, creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis in liability by the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). For harassment to be considered discriminatory, it must be "severe or pervasive" to create an abusive working environment. *Id.* The severe or pervasive standard must be considered through an objective viewpoint. *Id.* at 835 (citing *Harris v. Forklift Systems Inc.*, 510 U.S. 17, 22 (1993)). The plaintiff must also subjectively perceive the environment as hostile. *Id.* When looking at the totality of the circumstances to determine if the environment is hostile, the court must consider the frequency of the discriminatory conduct, the severity, whether the conduct was physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris*, 510 U.S. at 23). Isolated incidents, unless extremely serious, will not amount to a discriminatory change in working condition. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

The plaintiff has failed to present sufficient evidence to meet the *prima facie* case for a hostile work environment under Title VII or the ADEA. She states that the only allegedly harassing comment regarding her sex was a comment made by Zimmern that she should retire to

"go home and be a grandma." [*Plaintiff Deposition II* at 140-41]. This comment was an isolated comment made by a co-worker, Zimmern. Further, the comment was not made to the plaintiff but was instead said to someone else and was then told to the plaintiff. [*Id.* at 90]. Further, the plaintiff did not report this comment to any supervisor. [*Id.* at 91].

Additionally, the only incident that the plaintiff describes as hostile or intimidating was her confrontation with Zimmern. [*Id.* at 61]. The plaintiff testified that Zimmern had a patient in her assigned room and she informed Zimmern that she needed the room next because she had a patient who needed "stat x-rays." [*Id.* at 58]. After Zimmern finished his patient, the plaintiff went to get her patient but Zimmern had already brought another patient into the room. [*Id.*]

> . . . He didn't let me go in and do my patient in the room that I was assigned to. So he started talking loud in front of that patient, and I said "Ron, stop, your patient is hearing you." I said, "Stop talking loud." And he just said, "Well what you want me to do, take him off the table?" And I said, "No, I don't," I said, "stop talking loud in front of the patient."
>
> So he didn't stop and he just run back behind the board where we shoot x-rays and come like toward me. And I said, "Stop Ron," I put my hand out and he was just really furious. So I really feared, I didn't know what he might do.

[*Id.* at 58-59]. The plaintiff called security because Zimmern was "raging" and talking loud and coming toward her. [*Id.* at 59]. The plaintiff testified that this incident "made a hostile work environment for me, because it made me have a fear to try to work—you have to work with each other in that close environment with patients in order to do a good job." [*Id.* at 61]. The plaintiff has failed to present any evidence that this incident with Zimmern was related to her age or sex. The plaintiff's description of the incident does not describe any type of sexual harassment or harassment based on her age. Instead, she states she believes Zimmern treated her this way as he wanted her to retire because "he wanted all the overtime." [*Id.* at 63].

Even taking all of the alleged harassing comments described in the plaintiff's deposition together, the plaintiff has failed to create a genuine issue of material fact that she was subject to a hostile work environment based on her age or sex. The plaintiff did not describe in her deposition any comment made by management about her retirement plans, despite that allegation in her complaint. Zimmern's alleged comment that she needed to retire was not made directly to her, was not reported to management, and the plaintiff testified she thought the comment was made because Zimmern wanted more overtime, not because of the plaintiff's age or sex. Dr. Qayum's statement regarding "older employees" being set in their ways appeared to be a single, isolated comment made when discussing changes in technology coming to the department. Further, the plaintiff did not report to her supervisors that this comment was offensive to her. The plaintiff did not indicate that any alleged harassment prevented her from doing her job duties or interfered with her work.

The plaintiff has failed to present significant, probative evidence that the alleged harassing comments were based upon her protected status as a female or an employee over 40 or that the alleged harassing comments were severe or pervasive. The defendant's motion for summary judgment is GRANTED as it relates to the hostile work environment claim.

## IV. CONCLUSION

For the reasons stated above, the defendant's motion, [Doc. 22] is GRANTED. While this motion for summary judgment was pending, the defendant filed a motion to dismiss for lack of prosecution because the plaintiff failed to comply with the Court's scheduling order to submit a final pretrial order or witness list. [Doc. 34]. The plaintiff's attorney recently filed a motion to withdraw as attorney citing recent health issues. [Doc. 37]. Because the plaintiff's action is

dismissed, the pending motion to dismiss for failure to prosecute, [Doc. 34], and plaintiff's motion to withdraw as attorney, [Doc. 37], are DENIED as MOOT.

So ordered.

ENTER:


_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE